IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

HARTFORD CASUALTY INSURANCE
COMPANY,

    Plaintiff,

v.    No. 14-02681

COMANCHE CONSTRUCTION, INC.,
COMANCHE CONSTRUCTION INC. OF
GEORGIA, and SEABRIGHT
INSURANCE COMPANY,

    Defendants.

_____

ORDER OF REMAND
_____

*I. INTRODUCTION*

This is a declaratory judgment action brought on July 31, 2014, in the Chancery Court for Dyer County, Tennessee. (Docket Entry ("D.E.") 1-2.) Plaintiff, Hartford Casualty Insurance Company ("Hartford"), the workers' compensation carrier for Ford Construction Company ("Ford"), seeks to have Defendants, Comanche Construction, Inc.; Comanche Construction, Inc. of Georgia (collectively "Comanche"); and Seabright Insurance Company ("Seabright"), deemed to be the "responsible employer" of Ford's employee, Robert Blackwell, under the Tennessee Workers' Compensation Act ("TWCA"). Tenn. Code Ann. §§ 50-6-101 to -921. Such a finding would trigger Defendants' liability for Blackwell's past, present, and future workers' compensation benefits for injuries sustained in a workplace accident.

1

On September 4, 2014, the Defendants removed the case to this Court on the basis of complete diversity between the parties and the amount in controversy exceeding $75,000. (D.E. 1.) Plaintiffs did not oppose removal. Before the Court is Defendants' August 31, 2015 Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, requesting that the Court 1) dismiss the action for a lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief may be granted under Rule 12(b)(6), or 2) grant summary judgment because no genuine issue of material fact exists under Federal Rule of Civil Procedure 56. (D.E. 37.) Plaintiff responded in opposition to Defendants' motion (D.E. 45) and also moved for summary judgment. (D.E. 39.)

## II. FACTS ALLEGED

The following facts appear to be undisputed by the parties, unless otherwise noted. Comanche was a subcontractor hired to perform repair work on the I-155 bridge over the Mississippi River in Dyersburg, Tennessee. To complete this work, Comanche had to implement traffic controls, including placement of concrete barrier walls to protect workers from traffic and to protect motorists from construction hazards. Comanche rented a crane and crane operator from Ford to lift and move the barriers from a flatbed truck to an area on the bridge where the repairs were taking place. Because Comanche did not have any of its own crane operators on site, Ford selected and provided one of its experienced employees, Blackwell, to set up and operate the crane. No written agreement existed between Comanche and Ford for either the crane rental or Blackwell's work. Rather, there was a verbal agreement between Lyle Austin of Comanche and Sam Baggett of Ford to rent the crane and crane operator for approximately one day.

On May 7, 2009, the crane was transported to the jobsite by a Ford employee and set up by Blackwell. Comanche then requested that it be moved closer in order to reach a certain line on the bridge. After a dry run, Comanche next asked that the crane be moved again so that its counterweight would not protrude into the lane of traffic and that Blackwell swing the concrete barrier away from traffic.

Once Comanche employees connected the crane to the concrete barrier with a clamp, Blackwell lifted the barrier, which he was going to move and place on the line Comanche had drawn on the bridge. At that moment, the crane tipped and fell over the side of the bridge. Although Blackwell was able to jump onto the bridge before the crane went over, he was nonetheless seriously injured.

Thereafter, Blackwell's conservators filed a lawsuit against Comanche in the Circuit Court for Dyer County, Tennessee. *See Andrea Blackwell and Frederick Blackwell, Co-Conservators for the Estate and Person of Robert Blackwell, disabled v. Comanche Construction, Inc. and Comanche Construction, Inc. of Georgia*, No. 2009-CV-149 (Dyer Cty. Cir. Ct. 2009). The Plaintiffs asserted that Comanche acted negligently and sought damages for Blackwell's injuries. Hartford filed a motion to intervene in the tort action to protect its subrogation lien for those workers' compensation benefits it had paid to or on behalf of Blackwell since the accident.

Comanche subsequently filed a motion for summary judgment, but before the state court ruled on the motion, the parties settled. As a result, Comanche paid Blackwell $3.5 million in exchange for a Complete Release, Indemnity, and Settlement Agreement, which was approved by the trial court. (D.E. 45-5 ¶¶ 30, 31.) In the agreement, Blackwell released Comanche from any and all causes of actions, regardless of legal theory, including subrogation and indemnification, arising

3

out of the accident. *(*D.E. 45 at 6-7) As part of the settlement, Hartford acknowledged the "complete satisfaction of its subrogation lien," pursuant to Tennessee Code Annotated section 50-6-112 and agreed to compromise its claim for $1.3 million, which it received from the settlement proceeds paid by Comanche. (D.E. 45-5 at ¶31.) However, the parties stated that the agreement did not apply to the claims asserted by Hartford against Comanche in the declaratory judgment action—apparently referring to the instant case. (*Id.*) The parties acknowledged that "neither the satisfaction of said lien nor anything in [the agreement] shall operate to in any way prejudice the complaint seeking declaratory relief filed by Hartford" against Comanche and Seabright, or any claims asserted therein. (D.E. 45 at 7.)

### III. JURISDICTION

Removal of cases from state to federal court is governed by 28 U.S.C. § 1441(a), which provides,

> any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

A federal district court has original jurisdiction over any civil action "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). In actions seeking declaratory or injunctive relief, the party asserting jurisdiction must establish that the litigation's value, more likely than not, exceeds $75,000. *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 560 (6th Cir. 2010) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)).

4

However, even when the jurisdictional requirements are met, district courts have discretionary jurisdiction in declaratory judgment actions. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). Title 28 of the United States Code, section 2201 provides:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration . . . [and] any such declaration shall have the force and effect of a final judgment or decree . . . .

28 U.S.C. § 2201 (emphasis added). In *Wilton*, the United States Supreme Court stated,

> "[t]here is . . . nothing automatic or obligatory about the assumption of jurisdiction by a federal court to hear a declaratory judgment action." By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

515 U.S. at 288 (citations omitted) (quoting E. Borchard, Declaratory Judgments 312-314 (2d ed. 1941)). Thus, this Court has discretion when deciding whether to entertain a complaint for declaratory judgment. *See Able Cartage, Inc. v. Strategic Outsourcing, Inc.*, No. 1:04-1039-T-AN, 2005 WL 2333924, at *5 (W.D. Tenn. Sept. 6, 2005); *see also Wilton*, 515 U.S. at 282 ("[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act . . . , even when the suit otherwise satisfies subject matter jurisdictional prerequisites."); *A. L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 331 (1961) ("Declaratory judgment is a remedy committed to judicial discretion.").

The Sixth Circuit has adopted a five-factor test for consideration by a district court when determining whether jurisdiction should be exercised over a declaratory judgment action:

(1) whether the judgment would settle the controversy;

(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy that is better or more effective.

*AmSouth Bank v. Dale*, 386 F.3d 763, 785 (6th Cir. 2004) (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)) (finding the district court's assumption of jurisdiction over a declaratory action to be an abuse of discretion).

As to the first factor, it is unclear whether this action would settle the entire controversy. Were this Court to render a decision in this case, the parties could attempt to relitigate the same or similar issues either in the Dyer County courts or in the workers' compensation system. (*See* D.E. 46 at 7-9, D.E. 49 at 6-8.) Furthermore, in the event of an unfavorable ruling, the Defendants could attempt to seek indemnification from Blackwell, who is not a party in this lawsuit. (*Id.*) Thus, a subsequent state court action could render a decision in this declaratory action merely advisory. *Cf. Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812-13 (6th Cir. 2004) ("[D]eclaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court."). Accordingly, the Court finds that this first factor weighs against the exercise of jurisdiction.

Factor number two, whether the declaratory judgment action would provide a useful purpose in clarifying the legal relations at issue, weighs similarly against the exercise of jurisdiction. "The 'useful purpose' served by [a] declaratory judgment action is the clarification of legal duties for the

6

future . . ." *AmSouth Bank*, 386 F.3d at 786. For example, "a party with an ongoing contractual relationship who has been accused of breach can go to court and have the contract definitively interpreted [in a declaratory judgment action], thus allowing it to conform its behavior to the law and stop the potential accrual of damages." *Medtronic, Inc. v. Royer*, No. 3:12-CV-00414-JHM, 2013 WL 1411227, at *3 (W.D. Ky. Apr. 8, 2013) (quoting *AmSouth Bank*, 386 F.3d at 786).

In this case, however, no such underlying contract or obligation is present. Hartford seeks to "declare the rights and obligations of the parties as they pertain to the responsibilities for payment of past and future workers' compensation benefits," (D.E. 1-2 at 4), and shift responsibility for those payments to Comanche. Nevertheless, it appears from the pleadings that no workers' compensation case has been filed and no court order or agreement exists outlining the scope of those responsibilities. Although the TWCA "does not determine, as between contractors and subcontractors, who is primarily liable," *Travelers Ins. Co. v. Fidelity & Cas. Co. of N.Y.*, 409 S.W.2d 175, 178 (1966), the underlying financial responsibility arises from the TWCA. Thus far, it does not appear to the Court that any judicial body has determined Hartford's liability to Blackwell under that body of law. *See Nissan N. Am., Inc. v. Schrader Elecs., Ltd.*, No. 3:13-CV-0180, 2013 WL 3778729, at *1 (M.D. Tenn. July 18, 2013) ("Under Tennessee law, [indemnification] claims do not accrue until the end of the pertinent litigation . . . ."). Thus, the relative usefulness of this declaratory judgment action is questionable, and the Court finds that this factor weighs against the exercise of jurisdiction.

The third factor requires the Court to determine whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata." *AmSouth Bank*, 386 F.3d at 785. It is unclear what effect, if any, an action in this Court would have

7

on an action brought within the workers' compensation system. Upon examination of the pleadings, it does not appear that this case presents the appearance of a race for a binding decision. The Court is inclined to give Hartford the benefit of the doubt that no improper motive caused the filing of this action. Accordingly, the third factor does not weigh against the Court's exercise of jurisdiction.

The fourth factor requires consideration of the principles of federalism and the potential for conflict between state and federal courts. Hartford asks this Court to decide the legal obligations of parties within the workers' compensation legal framework. The TWCA is an ever-evolving body of state law with unique components and requirements. *See Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 443 (Tenn. 1984). It is a no-fault system that, since 1919, "has provided compensation for injured employees, eliminated employers' potential defenses, set attorney's fees, provided for a system of adjudication, abrogated the right of employees to pursue common law negligence actions, and capped employees' potential recovery" in Tennessee. *Yardley v. Hosp. Housekeeping Sys., LLC*, 470 S.W.3d 800, 804 (Tenn. 2015); *see also* Tenn. Code Ann. §§ 50-6-101 to -921. There is no federal equivalent within this Court's jurisdiction.

Hartford seeks the Court's declaration that Comanche 1) was Blackwell's "employer" for workers' compensation purposes, and 2) is required to indemnify Hartford for all past, present, and future workers' compensation payments. Resolving this claim involves the interplay between Tennessee contract, indemnity, and workers' compensation law and an inherent tension present among these laws. *Compare Winter v. Smith*, 914 S.W.2d 527, 542 (Tenn. Ct. App. 1995) ("In the absence of an express contract, an obligation to indemnify will be implied only if the party from who[m] indemnification is sought breached a contract or engaged in some other related tortious conduct."), *with Lang v. Nissan N. Am., Inc.*, 170 S.W.3d 564, 572-73 (Tenn. 2005) (TWCA creates

a "delicately balanced quid pro quo imposing no-fault liability in exchange for immunity from tort claims and limits on the amount of workers' compensation liability . . . ." (quoting Joseph H. King, Jr., *The Exclusiveness of an Employee's Workers' Compensation Remedy Against His Employer*, 55 Tenn. L. Rev. 405, 411-12 (1988))). Although the TWCA explicitly creates a no-fault system, it would appear that recent Tennessee case law requires a finding of at least negligence in order to require indemnification, absent an express agreement. *See Winter*, 914 S.W.2d at 542.

As the parties did not have a contract containing an express indemnification clause, important policy questions must be answered in order to resolve this case. The Tennessee state court system is equally equipped to decide such matters of Tennessee law. For this Court to retain jurisdiction over such a case could increase the friction between our federal and state courts and be seen as improperly encroaching on state jurisdiction. *See AmSouth*, 386 F.3d at 785. Thus, the fourth factor weighs against the exercise of jurisdiction.

The fifth factor inquires whether a better, more effective remedy exists. In this case, the alternative to this Court's exercise of jurisdiction—remanding the case to the chancery court—is an arguably more effective solution. *See id.* The chancery courts of Tennessee, along with its circuit courts, have served as courts of appeal in workers' compensation cases once the administrative review process is exhausted. *See, e.g.*, *Ratledge v. Langley Enters.*, No. E2014-02089-SC-R3-WC, 2015 WL 5677184 (Tenn. Workers Comp. Panel Sept. 28, 2015) (worker's compensation appeal originating in Hamilton County Chancery Court); *Riley v. INA/AETNA Ins. Co.*, 825 S.W.2d 80, 81 (Tenn. 1992)) (worker's compensation appeal originating in Dyer County Chancery Court). Thus, they are well suited to decide the important policy implications involved in this case. *See Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 298 (1943) ("It is in the public interest that

9

federal courts of equity should exercise their discretionary power to grant or withhold relief so as to avoid needless obstruction of the domestic policy of the states."). Moreover, the chancery courts have "all the powers, privileges and jurisdiction properly and rightfully incident to a court of equity," Tenn. Code Ann. § 16-11-101 (2015), and this action is one based in equity. *See In re Air Crash Disaster*, 86 F.3d 498, 548 (6th Cir. 1996) ("Indemnity serves to shift the burden of loss between parties when equity so requires."). Thus, the Dyer County Chancery Court—where this action was originally filed— is the more appropriate forum to hear this lawsuit.

*IV. CONCLUSION*

For the reasons stated herein, the Court finds that the *AmSouth Bank* factors weigh against the exercise of discretionary jurisdiction. Accordingly, this case is REMANDED to the Dyer County Chancery Court.

IT IS SO ORDERED this 4th day of January 2016.

s/ J. DANIEL BREEN<br>
CHIEF UNITED STATES DISTRICT JUDGE